**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSENFELD FAMILY TRUST, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GENWORTH FINANCIAL, INC., THOMAS J. MCINERNEY, JAMES S. RIEPE, WILLIAM H. BOLINDER, G. KENT CONRAD, MELINA E. HIGGINS, DAVID M. MOFFETT, THOMAS E. MOLONEY, and JAMES A. PARKE,<br>Defendants. | Case No: _____<br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**
**FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Rosenfeld Family Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought on behalf of the public stockholders of Genworth Financial, Inc. ("Genworth" or the "Company") against Genworth and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which Genworth will be acquired by China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide") through its newly formed subsidiary Asia Pacific Global Capital Co., Ltd.

("Parent" or "Asia Pacific"), and Parent's U.S.-incorporated wholly-owned subsidiary Asia Pacific Global Capital USA Corporation ("Merger Sub") (the "Proposed Transaction").

2.      On October 23, 2016, Genworth issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Genworth to China Oceanwide.  Under the terms of the Merger Agreement, China Oceanwide will acquire all outstanding shares of Genworth for $5.43 in cash per share of Genworth's Class A common stock (the "Merger Consideration").  China Oceanwide will also contribute to Genworth $600 million of cash to address Genworth's debt maturing in 2018, and $525 million of cash to the U.S. life insurance businesses.  The Proposed Transaction is valued at approximately $2.7 billion.

3.      The Proposed Transaction is the result of an unfair process designed to ensure the sale of Genworth to China Oceanwide on terms preferential to defendants and other Company insiders.  The Proposed Transaction is being driven by Genworth insiders, who not only stand to benefit from the accelerated vesting of their unvested equity awards, but have also secured employment with the combined company.

4.      Additionally, following initiation of the Company's restructuring plan, in the first quarter of 2016 Genworth beat analysts' expected $0.21 earnings per share by $0.04 per share.  Furthermore, on April 29, 2016, an analyst at Compass Point Research & Trading LLC set a $5.50 per share target price of the Company, $0.07 per share ***above*** the Merger Consideration.

5.      On December 21, 2016, Genworth filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC").  The Proxy, which recommends that Genworth stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i)

Genworth management's projections, utilized by the Company's financial advisors, Goldman, Sachs & Co. ("Goldman Sachs") and Lazard Frères & Co. LLC ("Lazard") in their financial analyses; (ii) the valuation analyses performed by Goldman Sachs and Lazard in connection with the rendering of their fairness opinions; and (iii) the sale process leading up to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

6.      In short, the Proposed Transaction will unlawfully divest Genworth's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such problems are remedied and the material information presently being withheld from Genworth stockholders is disseminated to Genworth stockholders prior to the stockholder vote on the Proposed Transaction.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial portion of the actionable conduct took place in this District.

**PARTIES**

10.     Plaintiff Rosenfeld Family Trust is, and has been at all times relevant hereto, a continuous stockholder of Genworth.

11.     Defendant Genworth is a Delaware corporation with its principal executive offices located at 6620 West Broad Street, Richmond, VA 23230.  Genworth's common stock is traded on the New York Stock Exchange under the ticker symbol "GNW."

12.     Defendant Thomas J. McInerney ("McInerney") has been President, Chief Executive Officer ("CEO") and a director of the Company since January 2013.

13.     Defendant James S. Riepe ("Riepe") has been Non-Executive Chairman of the Board since May 2012 and a director of the Company since March 2006.  Defendant Riepe was previously appointed Lead Director in February 2009.

14.     Defendant William H. Bolinder ("Bolinder") has been a director of the Company since October 2010.

15.     Defendant G. Kent Conrad ("Conrad") has been a director of the Company since March 2013.

16.     Defendant Melina E. Higgins ("Higgins") has been a director of the Company since September 2013.

17.     Defendant David M. Moffett ("Moffett") has been a director of the Company since December 2012.

18. Defendant Thomas E. Moloney ("Moloney") has been a director of the Company since October 2009.

19. Defendant James A. Parke ("Parke") has been a director of the Company since May 2004.

20. Defendants McInerney, Riepe, Bolinder, Conrad, Higgins, Moffett, Moloney, and Parke are collectively referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

21. China Oceanwide is a privately held, family-owned international financial holding group headquartered in Beijing, China. Its operations include financial services, energy, culture and media, and real estate assets worldwide.

22. Parent is a limited liability company incorporated in the People's Republic of China and a subsidiary of China Oceanwide.

23. Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of Parent.

### CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Genworth common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of December 15, 2016, there were approximately 498,398,455 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Genworth or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

> (a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;
>
> (b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and
>
> (c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

31.     Genworth is an insurance company founded in 1871 as The Life Insurance Company of Virginia.  The Company offers a variety of products and services, including long-term care ("LTC") insurance, income assurance immediate need annuity and mortgage insurance.  Genworth's mortgage insurance operations span the United States, as well as Canada and Australia.  Genworth went public in 2004, after being spun-off of General Electric Co. in an initial public offering.

32.     The financial crisis severely impacted the insurance industry, as homeowners defaulted on mortgages and insurance businesses faced low interest rates, and Genworth was no exception.

33.     In order to meet new capital requirements and reduce debt, Genworth recently simplified its business portfolio.  In July 2015, the Company sold its lifestyle protection insurance business to AXA S.A.  In October 2015, Genworth sold its European mortgage insurance business to AmTrust Financial Services Inc.  Then, on February 4, 2016, Genworth announced a series of internal restructuring actions aimed at separating and isolating its LTC business, subject to regulatory and other potential third-party approvals.  In addition, Genworth announced it was suspending all sales of traditional life insurance and fixed annuity products.  Genworth subsequently sold its term life insurance new business platform to Pacific Life Insurance Company ("Pacific Life") in June 2016.

34.     The restructuring has proven to be a success.

35.     On August 2, 2016, the Company released its second quarter 2016 financial results.  Significantly, Genworth reported net income of $172 million, compared with a net loss of $193 million year over year.  Net operating income was $123 million for the quarter, an

improvement from $119 million year over year.  In the August 2, 2016 press release, defendant McInerney commented on the quarter's financial results, stating, "Our results in the second quarter were solid, and we were especially pleased with the strong performance in U.S. MI.  We also achieved our cash expense reduction target and remain on track to complete the repatriation of our Bermuda subsidiary in the fourth quarter."

36.     Genworth's stock price subsequently rebounded.  As seen in the chart below, after closing at $2.75 per share on August 2, 2016, Genworth's stock price continuously rose, closing at $5.21 per share on October 21, 2016:



37.     On November 3, 2016, the Company released its third quarter 2016 financial results.  Although Genworth reported a net loss stemming from charges related to a review of its long-term care ("LTC") claim reserves, analysts remained positive about Genworth's potential.

38.     For example, in the November 10, 2016 "Genworth Financial Company Primer," Bloomberg Intelligence Senior Industry Analyst Jonathan Adams and Bloomberg Intelligence Associate Jeffrey Flynn noted Genworth's potential after the Company released its third quarter financial results.  Specifically, the analysts stated:

[a]fter Genworth's 2% increase in 3Q revenue to $2.2 billion, modest gains may extend through year-end and into 2017.  For 2016, long-term care revenue rose 10% through 3Q, boosted by premium rate increases, but drags on growth are also present. . . . Still, net investment income rose 2.8% in 3Q and U.S. mortgage insurance premiums are on the rise, up 16% vs. 3Q15.

39.    Further, a November 4, 2016 J.P. Morgan North America Equity Research article noted that "U.S. MI results were healthy and our outlook remains positive.  In 3Q16, the U.S. MI business reported earnings of $66 million, well above our $45 million estimate."  Additionally, J.P. Morgan "project[ed] results in the U.S. MI business to improve further given positive housing market trends and the ongoing economic recovery."

40.    China Oceanwide is now seeking to take advantage of Genworth at a time when the Company is poised for a recovery.  For example, a December 28, 2016 *Seeking Alpha* article titled, "Year-End Tax Loss Bargains: 2 'Strategic' Stocks To Buy Now," states that China Oceanwide's acquisition of the Company is capping Genworth's strong financial prospects in the coming year, explaining:

> *[t]he rising interest rate environment has sent many financial stocks soaring recently, but this deal seems to have capped it for Genworth*. . . . Based on recent statements from the Federal Reserve, many analysts now believe we could see four rate hikes in 2017 and 3.5% yields on 10-Year Treasury bonds. *That rate environment would be hugely beneficial for Genworth, and yet none of this appears to be priced in* as it has been left out of the major rally in financial stocks due to the deal capping the upside at $5.43 per share.
>
> Besides the fact that the end of tax loss selling could help push Genworth's shares higher, here are a couple of other positives to consider. Genworth Australia (GMA.AX) and Genworth Canada (MIC.TO) are trading near 52-week highs right now. These are very valuable and liquid assets, and Genworth owns stakes of about 50% in each of these publicly-traded companies . . . Genworth's stakes in these companies are valued at about $2.4 billion, which is actually more than the current market cap of the company itself, which is about $2 billion. That shows a lot of potential value that could eventually be unlocked, especially if GNW succeeds in turning the long-term care division into the consistently profitable business that it once was.

* * *

9

> ***I think Genworth could get more for its shareholders without the deal***, but let's assume it goes through, in which case, shareholders get $5.43 per share in cash. This would be a gain of roughly 35%. That is too large of a discount, especially for a stock that could be better off if the deal is not completed.

Emphasis added.

41.     In addition, an October 24, 2016 *Zacks* article entitled "Genworth and China Oceanwide Sign $2.7B Acquisition Deal," describes the advantages of the Proposed Transaction to China Oceanwide:

> China Oceanwide views Genworth an ace player in mortgage insurance and long-term care insurance markets that offers significant growth opportunities for the future. Given that the China-based insurer is intensifying its focus to brace up its mortgage insurance and long-term care businesses, the addition of Genworth to its portfolio will expand as well as strengthen its international operations.

**The Flawed Sale Process**

42.     The essentially single-bidder process that led to the Merger Agreement was catered towards China Oceanwide and Company insiders from the outset.

43.     In February 2015, the Company initiated an auction process to sell all or part of its U.S. life insurance and annuity businesses excluding the LTC insurance business (the "L&A businesses") (referred to in the Proxy as the "Life and Annuity Transaction").  In April 2015, the Company received seven preliminary proposals to acquire all or portions of its L&A business from parties referred to in the Proxy as Company A, Company C, Company D, and four other bidders.

44.     On April 14, 2015, a party referred to in the Proxy as Company B contacted Joseph Pehota ("Pehota"), Genworth's Senior Vice President–Corporate Development, to discuss a potential transaction with Genworth.  On April 21, 2015, Genworth and Company B entered into a confidentiality agreement that contained a standstill provision restricting Company B from

taking certain actions with respect to Genworth's equity securities unless invited to do so by the Board.

45.     On May 4, 2015, Company B submitted a written indication of interest to acquire Genworth for $12.50 per share.  On June 15, 2015, Company B reduced its potential offer price to $10-$11 per share.

46.     Also in May 2015, China Oceanwide's financial advisor contacted defendant McInerney indicating China Oceanwide's interest in a potential transaction with Genworth.

47.     On July 1, 2015, Company B withdrew its proposal to purchase all of the outstanding shares of Genworth and instead proposed to purchase Genworth's U.S. life insurance business (referred to in the Proxy as the "L&A and LTC Transaction").  The Board ultimately directed management to terminate discussions with Company B.

48.     Companies A, C, and D also indicated interest in the L&A and LTC Transaction. Throughout the remainder of 2015 and through September 2016, Genworth held numerous meetings and discussions with Company A, during which Company A repeatedly submitted proposals to acquire the Company's L&A businesses and its LTC insurance business.  Company A submitted its most recent proposal on September 16, 2016 to acquire Genworth's L&A businesses for approximately $1.22 billion, but Genworth declined to proceed with this transaction.

49.     On February 5, 2016, China Oceanwide submitted a preliminary indication of interest to purchase all of Genworth's outstanding stock for an aggregate purchase price of $3 billion, or approximately $6.03 per share.  Shortly thereafter, China Oceanwide dangled the carrot of management retention, stating in a February 16, 2016 email that it "expected to retain Genworth's management team and to rely on them to operate the business."

50.     On February 17, 2016, Company D submitted a proposal to the Board providing two options: (1) for Company D to acquire all outstanding shares of Genworth for $3.50 per share, a premium of approximately 95% to the $1.79 per share closing price of Genworth's common stock on February 16, 2016; and (2) for Company D to make a $750 million preferred equity investment in Genworth, secured by a lien on the shares of Genworth's U.S. mortgage insurance holding company.  Subsequently, Genworth negotiated confidentiality agreements that included standstill provisions with each of Company D and China Oceanwide that were executed on March 3, 2016, and March 4, 2016, respectively, the details of which are not disclosed in the Proxy.  Despite having received interest in an acquisition of the entire Company from Company B and Company D, the Board failed to pursue a transaction with either party or engage the market in a value-maximizing process for the entire Company, instead focusing on a deal with China Oceanwide.

51.     On March 17, 2016, the Board established the Strategic Transaction Committee (the "STC"), comprised of undisclosed independent directors, to review potential strategic transactions involving Genworth.  On May 11, 2016, the Board appointed an additional undisclosed independent director as an alternate member of the STC.

52.     On June 15, 2016, China Oceanwide delivered a revised proposal to the Company's financial advisors lowering its purchase price to $5.43 per share.

53.     Beginning on August 3, 2016 through the signing of the Merger Agreement, Genworth's stock rebounded, increasing from $2.75 per share to $5.21 per share on October 21, 2016.

54.     Between September 28 and September 30, 2016, defendants Riepe and McInerney and other members of Genworth management held meetings in Beijing with President and

Chairman of China Oceanwide, Lu Zhiqiang ("Lu"), and Xiaoxia Zhao ("Zhao"), President and CEO of China Oceanwide's insurance group. Despite the rebound of the Company's stock price – and the shrinking premium that China Oceanwide's $5.43 per share proposal reflected to Genworth's public stockholders – China Oceanwide refused to increase its proposed $5.43 per share proposal, which represented a mere 9.5% premium to the $4.96 per share closing price of Genworth's common stock on September 30, 2016.

55.     On August 1, 2016, defendants Riepe and McInerney discussed with Zhao and Xuan Wang ("Wang"), a Vice President of China Oceanwide's insurance group, that the Board was considering an alternative transaction for the sale of the Company's L&A businesses, which the Board considered more likely to be consummated than the merger with China Oceanwide.

56.     On August 26, 2016, Genworth provided projections to S&P's Ratings Evaluation Service,[1] for use in developing indicative ratings under two financial scenarios. Genworth provided S&P's Ratings Evaluation Service with updated projections on September 28, 2016.

57.     On September 16, 2016, Company A submitted a proposal to acquire Genworth's L&A businesses for approximately $1.22 billion.

58.     Also on September 16, 2016, Genworth provided China Oceanwide with its September projections. On September 25, 2016, Company management presented the September projections to the Board. On October 9, 2016, Genworth management presented a revised version of the September projections to the Board.

---

[1] On July 28, 2016, Genworth and China Oceanwide entered into a letter agreement pursuant to which Genworth agreed to engage S&P for its rating evaluation services in connection with the merger and China Oceanwide agreed to reimburse Genworth for all fees and expenses payable in connection with such engagement, subject to the terms of such letter agreement.

59.     On October 13 and October 14, 2016 Company management presented a further revised version of the September projections to the Board.  Despite outstanding interest from Company A in the acquisition of its L&A businesses, the Board determined to proceed with a transaction with China Oceanwide.  Shortly thereafter, on October 20, 2016, Goldman and Lazard delivered their fairness opinions to the Board and the Board determined that the terms of the Merger Agreement were acceptable.

60.     On October 21, 2016, the Board approved the Merger Agreement and the parties subsequently executed the Merger Agreement after the close of the market on the same day.

**The Proposed Transaction**

61.     On October 23, 2016, the Company and China Oceanwide issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> RICHMOND, Va. and BEIJING, Oct. 23, 2016 -- China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide") and Genworth Financial, Inc. (NYSE: GNW) ("Genworth") today announced that they have entered into a definitive agreement under which China Oceanwide has agreed to acquire all of the outstanding shares of Genworth for a total transaction value of approximately $2.7 billion, or $5.43 per share in cash. The acquisition will be completed through Asia Pacific Global Capital Co. Ltd., one of China Oceanwide's investment platforms. The transaction is subject to approval by Genworth's stockholders as well as other closing conditions, including the receipt of required regulatory approvals.
>
> * * *
>
> Upon the completion of the transaction, Genworth will be a standalone subsidiary of China Oceanwide and Genworth's senior management team will continue to lead the business from its current headquarters in Richmond, Virginia. Genworth intends to maintain its existing portfolio of businesses, including its MI businesses in Australia and Canada.  Genworth's day-to-day operations are not expected to change as a result of this transaction.
>
> China Oceanwide is a privately held, family owned international financial holding group founded by Mr. Lu Zhiqiang. Headquartered in Beijing, China, China Oceanwide's well-established and diversified businesses include operations in financial services, energy, culture and media, and real estate assets globally,

including in the United States. Businesses controlled by China Oceanwide have more than 10,000 employees globally.

* * *

Genworth will continue to focus on its key financial priorities, including strengthening the balance sheet and stabilizing and improving ratings over time, particularly in its U.S. MI business. Genworth will also continue to focus on its key operational priorities, most notably executing its multi-year LTC rate action plan, which is essential to stabilizing the financial position of the legacy LTC business. China Oceanwide has no current intention or future obligation to contribute additional capital to support Genworth's legacy LTC business.

The transaction, which has been approved by both companies' boards of directors, is expected to close by the middle of 2017, subject to the requisite approval by Genworth's stockholders as well as certain other closing conditions, including the receipt of regulatory approvals. Both China Oceanwide and Genworth have initiated discussions with regulators in key jurisdictions.

**Insiders' Interests in the Proposed Transaction**

62.    China Oceanwide and Genworth insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Genworth.

63.    Notably, defendant McInerney and Company management have secured positions for themselves with China Oceanwide.  According to the October 22, 2016 press release announcing the Proposed Transaction: "Upon the completion of the transaction, Genworth will be a standalone subsidiary of China Oceanwide and Genworth's senior management team will continue to lead the business from its current headquarters in Richmond, Virginia."

64.    Moreover, Company insiders stand to reap a substantial financial windfall for securing the deal with China Oceanwide.  Pursuant to the Merger Agreement, upon consummation of the merger, Genworth's directors and officers will receive cash payments

from the accelerated vesting of all outstanding equity awards, as set forth in the following table:

| Name | Vested DSUs (#) | Vested DSUs (2) ($) | Unvested RSUs(#) (3) | Unvested RSUs($) (3) | Unvested PSUs(#) (4) | Unvested PSUs($) (4) | Total($) |
|---|---|---|---|---|---|---|---|
| *Executive Officers* (5) | | | | | | | |
| Thomas J. McInerney | — | $        — | — | $        — | 1,583,333 | $   8,597,498 | $   8,597,498 |
| Kelly L. Groh | — | $        — | 141,612 | $   768,953 | 180,000 | $   977,400 | $   1,746,353 |
| Kevin D. Schneider | — | $        — | 269,999 | $   1,466,095 | 452,500 | $   2,457,075 | $   3,923,170 |
| Daniel J. Sheehan IV | — | $        — | 234,999 | $   1,276,045 | 333,333 | $   1,809,998 | $   3,086,043 |
| Michael S. Laming | — | $        — | 94,201 | $   511,511 | 152,500 | $   828,075 | $   1,339,586 |
| *All Other Executive Officers as a Group (3 individuals)* | — | $        — | 231,596 | $   1,257,566 | 394,999 | $   2,144,845 | $   3,402,411 |
| *Non-Employee Directors as a Group (10 individuals)* (6) | 972,137 | $   5,278,705 | — | $        — | — | $        — | $   5,278,705 |

65.    Further, if they are terminated in connection with the Proposed Transaction, Genworth's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash (1) | Equity (2) | Pension/ NQDC (3) | Perquisites/ Benefits (4) | Other (5) | Total |
|---|---|---|---|---|---|---|
| Thomas J. McInerney *President and Chief Executive Officer* | $   8,500,000 | $   4,524,998 | $   291,410 | $   39,717 | $        — | $   13,356,125 |
| Kelly L. Groh *Executive Vice President and Chief Financial Officer* | $   2,475,000 | $   1,257,653 | $   1,004,516 | $   21,797 | $        — | $   4,758,966 |
| Kevin D. Schneider *Executive Vice President and Chief Operating Officer* | $   4,168,750 | $   2,932,195 | $   3,755,869 | $   40,356 | $   1,000,000 | $   11,897,170 |
| Michael S. Laming *Executive Vice President, Human Resources* | $   2,000,000 | $   515,850 | $        — | $   16,095 | $        — | $   2,531,945 |
| Daniel J. Sheehan IV *Executive Vice President and Chief Investment Officer* | $   3,825,000 | $   2,339,418 | $   3,058,731 | $   30,719 | $   1,000,000 | $   10,253,868 |

## The Proxy Contains Numerous Material Misstatements or Omissions

66.     On December 21, 2016, defendants filed the materially incomplete and misleading Proxy with the SEC and disseminated it to Genworth's stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

67.     Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Genworth management's projections, utilized by Goldman Sachs and Lazard in their financial analyses; (ii) the valuation analyses prepared by Goldman Sachs and Lazard in connection with the rendering of their fairness opinions; and (iii) the sale process leading up to the Proposed Transaction.  Accordingly, Genworth stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### Material Omissions Concerning Genworth's Financial Projections

68.     The Proxy fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

69.     With respect to the "Summary of Genworth's Management Base Forecast" on page 89 of the Proxy, the Proxy fails to disclose the financial projections provided by Genworth management and relied upon by Goldman Sachs and Lazard in conducting their analyses, for fiscal years 2016-2021, for the following items: GAAP Equity; GAAP Equity, excluding AOCI; GAAP Net operating earnings; Total GAAP Operating Expenses; Statutory net income (loss) attributable to Genworth; Book value per share, excluding AOCI; and Net operating loss carryforward balances and utilization.  In addition, the Proxy provides projections for Non-

GAAP Leverage Ratio, but fails to provide line item projections for the metrics used to calculate this non-GAAP measure or otherwise reconcile the non-GAAP projections to GAAP.

70.     Moreover, in performing their sum-of-the parts discounted cash flow analyses, Goldman Sachs and Lazard relied on management projections for the following segments of Genworth: (1) U.S. Life, including the L&A businesses and LTC insurance business ("U.S. Life"); (2) US MI; (3) Genworth Australia; and (4) Genworth corporate and other assets ("Corporate and Other").  However, the Proxy fails to disclose the financial projections for each of the segments for years 2016-2021.

71.     Finally, according to the Proxy, Company management presented what are referred to as "September projections" to the Board at its September 25, 2016 Board meeting. Management presented a revised set of September projections to the Board at its October 9, 2016 Board meeting.  Management revised the September projections a third time, and presented what is referred to as the "Base Forecast" to the Board at its October 13 and 14, 2016 Board meetings. Although management revised its projections twice near the end of negotiations with China Oceanwide, the Proxy fails to disclose the September projections provided to the Board at its September 25 and October 9, 2016 Board meetings.

72.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 89 of the Proxy:

The following table summarizes the Base Forecast prepared by Genworth's management as described above:

**Summary of Genworth's Management Base Forecast**

Financial Metrics

| ( $ in millions, unless per share amounts) | 2016E | | 2017E | | 2018E | | 2019E | | 2020E | | 2021E | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Projected Fiscal Year | | | | | | | |
| **Non-GAAP Operating Earnings (Loss) per Share** | $ | (0.41) | $ | 0.68 | $ | 0.66 | $ | 0.81 | $ | 0.96 | $ | 0.98 |
| **Non-GAAP Operating Return on Equity ("ROE")** | | (2.2)% | | 3.8% | | 3.6% | | 4.2% | | 4.8% | | 4.7% |
| **Book Value Per Share** | $ | 17.72 | $ | 18.23 | $ | 18.73 | $ | 19.52 | $ | 20.40 | $ | 21.36 |
| **Cash Flow Coverage (1)** | | 0.8 | | 0.6 | | 1.1 | | 0.9 | | 0.8 | | 0.7 |
| **Non-GAAP Leverage Ratio** | | 25.8% | | 18.2% | | 17.9% | | 19.3% | | 17.7% | | 13.9% |
| **MI Dividends (2)** | $ | 222 | $ | 424 | $ | 209 | $ | 187 | $ | 167 | $ | 128 |
| **Holding Company Cash ($ in billions)** | $ | 1.5 | $ | 0.4 | $ | 0.4 | $ | 0.9 | $ | 0.8 | $ | 0.3 |
| **Holding Company Debt ($ in billions)** | $ | 3.8 | $ | 2.3 | $ | 2.3 | $ | 2.7 | $ | 2.5 | $ | 1.9 |
| **Debt to Capital Ratio** | | 31% | | 23% | | 22% | | 24% | | 22% | | 17% |

(1) Cash Flow Coverage means the difference of the aggregate dividends paid to Genworth Holdings from Genworth Holdings' subsidiaries less cash contributed by Genworth Holdings to its subsidiaries in the same period, divided by interest expense and estimated corporate overhead costs of Genworth Holdings that are not reimbursed by such subsidiaries. The 2016 Cash Flow Coverage metric excludes the $175 million cash contribution from Genworth Holdings to GLIC to facilitate the unstacking. Including this $175 million cash contribution from Genworth Holdings to GLIC would make the 2016 Cash Flow Coverage 0.2. The 2017 Cash Flow Coverage metric excludes a $300 million dividend paid by US MI to Genworth Holdings from the proceeds of an assumed debt issuance by US MI. Including this $300 million dividend from US MI to Genworth Holdings would make the 2017 Cash Flow Coverage 2.3. Cash Flow Coverage is an operating measure that is not defined by GAAP and all of the inputs are calculated in accordance with GAAP. Accordingly Cash Flow Coverage is not a non-GAAP financial measure.

(2) MI Dividends reflects the projected dividends for each of Genworth Australia, US MI, and in the case of fiscal 2016 only, Genworth Canada, in the aggregate. The Base Forecast assumes there will be no dividends from U.S. Life to Genworth Holdings during the forecast period. The projected dividends for 2017E include a $300 million dividend paid by US MI to Genworth Holdings from the proceeds of an assumed debt issuance by US MI.

(b)     From pages 86-87 of the Proxy:

The September projections were reviewed with the Board at its September 25, 2016 meeting. Genworth's management also reviewed with the Board at that time its preliminary risk assessment of the September projections. Among other things, the September projections presented to the Board did not include any future provisions for a number of risks, including further incremental LTC insurance claims deterioration, lower interest rates or any increase in asset capital charges from changes in regulatory capital requirements. Genworth's management also reviewed with the Board potential upside opportunities associated with the September projections, including the positive effects of gradually rising interest rates, equity market increases and larger LTC rate actions than those contemplated in the then current multi-year rate action plan.

At the September 25, 2016 Board meeting and subsequent meetings, the directors asked questions of Genworth's management with respect to the September projections and subsequent iterations thereof prepared by management between September 26, 2016 and October 14, 2016, as well as the various assumptions

presented to the Board at those meetings. In particular, at the October 9, 2016 meeting of the Board, the Board commented that management's assumptions regarding projected interest rates and S&P equity market index levels for the forecasted period appeared to be more conservative than those of independent economists, and the Board recommended that management further revise the September projections to use more current forecasts generated by independent economists for both interest rates and S&P equity market index levels. After these discussions, changes were made to a number of the assumptions used in the preparation of the September projections, including less conservative assumptions relating to future interest rates but also potential ratings downgrades and the related impact on US MI's market share. Specifically, an estimated tax valuation allowance of $300 million and the potential increase in LTC insurance claim reserves that could be recorded in the third quarter were assumed to result in a subsequent downgrading by S&P of Genworth Holdings; additionally, US MI's S&P ratings were assumed to be downgraded by one or two notches, with a resulting negative impact on US MI's market share and the assumed future interest rates were increased to reflect then-current interest rates and certain third-party estimates. Further, at the meeting of the Board on October 13, 2016 and October 14, 2016 (for further description of this meeting see the section entitled "—Background of the Merger , " beginning on page 30), Genworth's management summarized for the Board certain updates management had made to assumptions underlying the previous version of the September projections presented to the Board at the October 9, 2016 Board meeting based on discussions and input received from the Board at that meeting. A discussion ensued during which the directors asked questions of management concerning the assumptions underlying the revised projections. Following discussion, the Board determined that management's assumptions for S&P equity market index levels and risks continued to appear to be more conservative than those of independent economists, and the Board recommended that management further revise those assumptions to use more current forecasts for the S&P equity market index levels. Genworth's management confirmed that these forecasts would be updated accordingly. As a result, following the October 13-14, 2016 meeting of the Board, the September projections were further revised by management to increase the S&P equity market index level to its then-current level. The resulting set of financial projections for the fiscal years ended December 31, 2016 through 2021 is referenced in this proxy statement as the " ***Base Forecast* .**"

### *Material Omissions Concerning Goldman Sachs' and Lazard's Financial Analyses*

73.    The Proxy describes Goldman Sachs' and Lazard's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Goldman Sachs' and Lazard's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below,

Genworth's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs' and Lazard's fairness opinions in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Genworth's stockholders.

74.   The Proxy fails to disclose various material elements of the financial analysis performed by Goldman Sachs.  For example, with respect to Goldman Sachs' *Present Value of Future Share Price Analysis,* the Proxy fails to disclose: (i) the individual multiples for each of the selected public companies analyzed by Goldman Sachs, as well as any benchmarking analyses Goldman Sachs performed for Genworth in relation to the selected public companies; and (ii) the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate of 20.1%.

75.   In addition, with respect to Goldman Sachs' *Illustrative Sum-of-the-Parts Analysis,* the Proxy fails to disclose:

(i)   with respect to U.S. Life, (a) Goldman Sachs' basis for applying price to book value multiples ranging from 0.20x to 0.30x, (b) the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 11.0% to 13.0%, and (c) the projected book value per share of U.S. Life in 2020 as set forth in the Base Forecast utilized by Goldman Sachs in this analysis;

(ii)   with respect to Goldman Sachs' illustrative dividend discount analysis with respect to US MI, (a) Goldman Sachs' basis for applying one-year forward P/E multiples ranging from 8.0x to 10.0x, (b)the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 11.0% to 13.0%, (c) the estimated 2021 earnings per share for

US MI as set forth in the Base Forecast utilized by Goldman Sachs in this analysis, and (d) the estimated dividend streams from Genworth's assumed 80.1% ownership in US MI for the period 2017 through 2020 as set forth in the Base Forecast utilized by Goldman Sachs in this analysis;

(iii)   with respect to Goldman Sachs' illustrative trading range analysis for US MI, (a) Goldman Sachs' basis for applying P/E multiples ranging from 8.2x to 8.6x, and (b) estimated 2017 earnings for US MI as set forth in the Base Forecast utilized by Goldman Sachs in this analysis;

(iv)   with respect to Genworth Australia, (a) Goldman Sachs' basis for applying one-year forward P/E multiples ranging from 7.0x to 9.0x, (b) the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 11.0% to 13.0%, and (c) the estimated 2021 earnings per share for Genworth Australia as set forth in the Base Forecast utilized by Goldman Sachs in this analysis;

(v)   with respect to Corporate and Other, (a) Genworth Holdings' cash (excluding restricted cash) and debt valued at book value as provided by Genworth management (including estimates for the cash proceeds to Genworth Holdings from the assumed sale of its 57.3% stake in Genworth Canada, a one-time dividend paid by US MI to Genworth Holding from the proceeds of an assumed debt issuance by US MI and cash proceeds to Genworth Holdings from its assumed sale of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017) utilized by Goldman Sachs in its analysis, (b) the net present value of certain net deferred tax assets utilized by Goldman Sachs in its analysis, (c) the net present value as of December 31, 2017, of certain net accrued Genworth liabilities utilized by Goldman Sachs in its analysis, and (d) the estimated dividend streams from

Genworth's 52% ownership in Genworth Australia for the period 2017 through 2020 as set forth in the Base Forecast utilized by Goldman Sachs in this analysis; and

(vi)     the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate of 20.1%.

76.     The Proxy similarly fails to disclose various material elements of the financial analysis performed by Lazard.  With respect to Lazard's *Selected Companies Analysis,* the Proxy fails to disclose: (i) the individual multiples for each of the selected public companies analyzed by Lazard or, at the very least, the low, high, median and mean multiples observed by Lazard, as well as any benchmarking analyses Lazard performed for Genworth in relation to the selected public companies; (ii) the 2017 and 2018 return on average equity set forth in the Base Forecast utilized by Lazard in this analysis; and (iii) the estimated 2017 book value per share (ex. AOCI) of Genworth (based on the Base Forecast) utilized by Lazard in this analysis.  Without this omitted information, Genworth stockholders have no way of determining whether the multiples applied by Lazard were appropriate when compared to the multiples observed for the selected companies, and thus, have no way of determining whether the implied per share reference ranges accurately reflect the value of their shares.

77.     Further, with respect to Lazard's *Sum-of-the-Parts Analysis,* the Proxy fails to disclose:

(i)     with respect to U.S. Life, (a) Lazard's basis for applying price to book value (ex. AOCI) multiples ranging from 0.20x to 0.30x, (b) Lazard's basis for applying terminal value multiples ranging from 5.6x to 8.4x, (c) the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 10.0% to 12.0%, (d) the projected book value (ex. AOCI) of U.S. Life in 2020 as set forth in the Base Forecast utilized by Lazard in this

analysis, and (e) the estimate of fiscal year 2021 operating income as set forth in the Base Forecast utilized by Lazard in this analysis;

(ii)    with respect to US MI,  (a) Lazard's basis for applying one-year forward P/E multiples ranging from 8.0x to 10.0x, (b) the individual inputs and assumptions utilized by Lazard to derive the discount rate ranges of 8.5% to 10.0% and 10.0% to 12.0%, (c) estimated fiscal year 2021 operating earnings for US MI as set forth in the Base Forecast utilized by Lazard in this analysis, and (d) the estimated dividend streams from Genworth's assumed 80.1% ownership in US MI for the period 2017 through 2020 as set forth in the Base Forecast utilized by Lazard in this analysis;

(iii)    with respect to Genworth Australia, (a) Lazard's basis for applying one-year forward P/E multiples ranging from 7.0x to 9.0x, (b) the individual inputs and assumptions utilized by Lazard to derive the discount rate ranges of 9.0% to 10.5% and 10.0% to 12.0%, (c) estimated fiscal year 2021 operating earnings for Genworth Australia as set forth in the Base Forecast utilized by Lazard in this analysis, and (d) the estimated dividend streams from Genworth's 52% ownership in Genworth Australia for the period 2017 through 2020 as set forth in the Base Forecast utilized by Lazard in this analysis;

(iv)    with respect to Corporate and Other, (a) Genworth Holdings' cash (excluding restricted cash) and debt valued at book value as provided by Genworth management (including estimates for the cash proceeds to Genworth Holdings from the assumed sale of its 57.3% stake in Genworth Canada, a one-time dividend paid by US MI to Genworth Holding from the proceeds of an assumed debt issuance by US MI and cash proceeds to Genworth Holdings from its assumed sale of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017) utilized by Lazard in its analysis, (b) the net present

value of certain net deferred tax assets utilized by Lazard in its analysis, and (c) the net present value as of December 31, 2017, of certain net accrued Genworth liabilities utilized by Lazard in its analysis; and

(v)   the individual inputs and assumptions utilized by Lazard to derive the discount rate of 19.7%.

78.   The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)   From pages 74-76 of the Proxy:

*Present Value of Future Share Price Analysis* . Goldman Sachs performed analyses of the implied present value of the future share price of Genworth common stock, which is designed to indicate the present value of a theoretical future value of Genworth's equity as a function of its estimated future book value per share and an assumed range of price to book value multiples. For these analyses, Goldman Sachs used the Base Forecast for the one year periods ending December 31 of each of the years 2018 through 2021 and the number of fully diluted outstanding shares of Genworth as of December 31 of each of the years 2017 through 2020 as provided by Genworth's management. Goldman Sachs first performed a regression analysis to compare the implied relationship between reported price as a multiple of book value per share (excluding accumulated other comprehensive income, which we refer to as " ***ex. AOCI*** ", and, collectively, as the " ***P/BV (ex. AOCI)*** ") as of June 30, 2016 and the estimated return on average equity for 2017 (which we refer to as the " ***2017E ROAE*** ") for the following publicly traded companies using estimates from Institutional Brokers' Estimate System (which we refer to as " ***IBES*** ") for these selected companies:

- Metlife, Inc.

- Prudential Financial, Inc.

- Ameriprise Financial, Inc.

- Principal Financial Group, Inc.

- Lincoln National Corporation

- Unum Group

- Torchmark Corporation

- VOYA Financial, Inc.

- CNO Financial Group, Inc.

- Primerica, Inc.

- FBL Financial Group, Inc.

- American Equity Investment Life Holding Company

Although none of the selected companies is directly comparable to Genworth or has exposure to the LTC sector that is as significant as Genworth's, the selected companies included were chosen because they are publicly traded companies with operations that, for purposes of analysis, may be considered similar to certain operations of Genworth.

The regression analysis for the selected companies produced an R-squared value of 0.7959. Goldman Sachs applied this general relationship to Genworth's estimated return on average equity for each of the years 2018 through 2021 as reflected in the Base Forecast and calculated implied present values per share of Genworth common stock by assuming Genworth trades on the regression line (0.0% discount) and by applying the current discount at which Genworth trades to the regression line (28.4% discount). The regression analyses implied the following P/BV (ex. AOCI) multiples for each of the years 2017 through 2020 on the regression line versus P/BV (ex. AOCI) multiples after applying the discount for each of the years 2017 through 2020:

|  | Implied P/BV | Implied P/BV at Current Discount |
|---|---|---|
| 2017E | 0.43x | 0.31x |
| 2018E | 0.49x | 0.35x |
| 2019E | 0.55x | 0.40x |
| 2020E | 0.54x | 0.39x |

The estimated P/BV multiples for each of the years 2017 through 2020 implied by applying the current discount were then applied to estimated book value per share of Genworth as set forth in the Base Forecast for each of the years 2017 through 2020 to derive a range of implied future stock prices for Genworth for each of 2017 through 2020, which Goldman Sachs then discounted back to present value, using an illustrative discount rate of 20.1%, reflecting an estimate of Genworth's cost of equity. This analysis resulted in an illustrative range of implied present values per share of Genworth common stock of $3.80 to $4.66.

*Illustrative Sum-of-the-Parts Analysis.* Goldman Sachs performed an illustrative sum-of-the-parts analysis of Genworth to derive implied values as of January 1, 2017 for each of the following segments of Genworth:

- U.S. Life, including the L&A businesses and LTC insurance business (which we refer to as " ***U.S. Life*** ")

- US MI

- Genworth Australia

- Genworth corporate and other assets (which we refer to as " ***Corporate and Other*** ")

Goldman Sachs performed illustrative dividend discount analyses for U.S. Life, US MI and Genworth Australia to derive a range of implied values for each such segment. In addition, Goldman Sachs also performed an illustrative trading range analysis for US MI.

In performing an illustrative dividend discount analysis with respect to U.S. Life, Goldman Sachs calculated a range of illustrative terminal values for U.S. Life in 2020 by applying illustrative price to book value multiples ranging from 0.20x to 0.30x to the projected book value per share of U.S. Life in 2020 as set forth in the Base Forecast. Goldman Sachs then discounted the estimated dividend streams from U.S. Life for the period 2017 through 2020 as set forth in the Base Forecast (which were $0 for such period) and the range of illustrative terminal values to derive illustrative present values, as of January 1, 2017, of U.S. Life, which ranged from $888 million to $1.431 billion. Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital.

In performing an illustrative dividend discount analysis with respect to US MI, Goldman Sachs calculated a range of illustrative terminal values for Genworth's assumed 80.1% ownership stake in US MI (pro forma for the assumed sale by Genworth of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017, as reflected in the Base Forecast) in 2020 by applying one-year forward P/E multiples ranging from 8.0x to 10.0x to estimated 2021 earnings per share for US MI as set forth in the Base Forecast. Goldman Sachs then discounted the estimated dividend streams from Genworth's assumed 80.1% ownership in US MI for the period 2017 through 2020 as set forth in the Base Forecast and range of illustrative terminal values to derive illustrative present values, as of January 1, 2017, of Genworth's assumed 80.1% ownership stake in US MI. Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital. Goldman Sachs also performed an illustrative trading range analysis for US MI. In performing an illustrative trading range analysis for US MI, Goldman Sachs

derived a range of implied values for Genworth's assumed 80.1% ownership stake in US MI, by applying estimated P/E multiples ranging from 8.2x to 8.6x to estimated 2017 earnings for US MI as set forth in the Base Forecast. These analyses resulted in a valuation range for US MI from $1.285 billion to $1.660 billion.

In performing an illustrative dividend discount analysis of Genworth Australia, Goldman Sachs calculated a range of illustrative terminal values for Genworth's 52% ownership stake in Genworth Australia in 2020 by applying one-year forward P/E exit multiples ranging from 7.0x to 9.0x to estimated 2021 earnings per share for Genworth Australia as set forth in the Base Forecast. Goldman Sachs then discounted the estimated dividend streams from Genworth's 52% ownership in Genworth Australia for the period 2017 through 2020 as set forth in the Base Forecast and illustrative terminal values to derive illustrative present values, as of January 1, 2017, of Genworth's 52% ownership stake in Genworth Australia, which ranged from $477 million to $548 million. Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital.

Goldman Sachs also derived an implied value for Corporate and Other, which resulted in an implied valuation of $(1.266 billion), using the following data provided by Genworth's management: (i) pro forma estimates, as of January 1, 2017, of Genworth Holdings' cash (excluding restricted cash) and debt valued at book value as provided by Genworth management (including estimates for the cash proceeds to Genworth Holdings from the assumed sale of its 57.3% stake in Genworth Canada, a one-time dividend paid by US MI to Genworth Holding from the proceeds of an assumed debt issuance by US MI and cash proceeds to Genworth Holdings from its assumed sale of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017), (ii) the net present value of certain net deferred tax assets as of December 31, 2016 (valued using a discount rate of 11.6%, representing an estimate of Genworth's weighted average cost of capital, using the estimated utilization of such tax assets reflected in the Base Forecast) and (iii) the net present value as of December 31, 2017, of certain net accrued Genworth liabilities (valued using a discount rate of 11.6%, representing an estimate of Genworth's weighted average cost of capital, using the estimated net payment of such liabilities reflected in the Base Forecast).

Goldman Sachs added together the ranges of implied values it derived using the foregoing analyses to derive a range of implied equity values for Genworth, divided the result by the number of Genworth fully diluted shares outstanding provided by Genworth management and then discounted the implied values per share of Genworth common stock from January 1, 2017 to September 30, 2016 using a discount rate of 20.1%, representing Genworth's estimated cost of equity, to derive a range of implied present values per share of Genworth common stock of $2.61 to $4.48.

(b)      From pages 80-84 of the Proxy:

*Selected Companies Analysis.* Lazard reviewed and analyzed certain financial information, valuation multiples and market trading data related to selected comparable publicly traded companies that operate in the life insurance and mortgage insurance business sectors, whose operations Lazard believed, based on its experience with companies in the life insurance and mortgage insurance business sectors and its professional judgment, to be generally relevant in analyzing Genworth's operations for purposes of this analysis. Lazard compared such information for the selected comparable companies to the corresponding information for Genworth.

The group of selected companies in the life insurance sector used in this analysis with respect to Genworth was as follows:

- Metlife, Inc.

- Prudential Financial, Inc.

- Ameriprise Financial, Inc.

- Principal Financial Group, Inc.

- Lincoln National Corporation

- Unum Group

- Torchmark Corporation

- VOYA Financial, Inc.

- CNO Financial Group, Inc.

- Primerica, Inc.

- FBL Financial Group, Inc.

- American Equity Investment Life Holding Company

The group of selected companies in the mortgage insurance sector used in this analysis with respect to Genworth was as follows:

- Radian Group Inc.

- MGIC Investment Corporation

- Essent Group Ltd.

29

- NMI Holdings, Inc.

Lazard selected the companies reviewed in this analysis because, among other things, the selected companies operate businesses similar in certain respects to the business of Genworth. However, no selected company is identical to Genworth. In particular, none of the selected comparable companies has exposure to LTC insurance business that is as significant as Genworth's. Accordingly, Lazard believes that purely quantitative analyses are not, in isolation, determinative in the context of the merger and that qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of Genworth and the selected companies that could affect the public trading values of each company are also relevant.

Lazard calculated and compared various financial multiples for each of the selected companies and Genworth based on estimates from IBES, including, among other things:

- closing price per share as of October 18, 2016, as a multiple of estimated 2017 earnings per share (which we refer to as " *P/E 2017E* ");

- closing price per share as of October 18, 2016, as a multiple of estimated 2018 earnings per share (which we refer to as " *P/E 2018E* "); and

- closing price per share as of October 18, 2016, as a multiple of P/BV (ex. AOCI) as of June 30, 2016 (which we refer to as " *2Q'2016 P/BV (ex AOCI)* ").

Lazard also conducted a regression analysis to measure the relationship between estimated return on average equity for 2017 and the ratio of P/BV (ex. AOCI) for the selected companies. Based on this analysis and assuming the current discount at which Genworth trades to the regression line (28.4% discount), Lazard noted that (i) the 2017 return on average equity set forth in the Base Forecast implied a ratio of P/BV per share for Genworth of 0.32x and (ii) the 2018 return on average equity set forth in the Base Forecast implied a ratio of P/BV per share for Genworth of 0.31x.

Based on the analyses summarized above and Lazard's professional judgment, including with respect to the comparability of the selected companies, Lazard selected a reference range (with the low end of each such range representing the multiple derived with respect to Genworth using IBES estimates) of:

- 5.5x to 8.6x for P/E 2017E;

- 5.4x to 7.7x for P/E 2018E;

- 0.26x to 0.32x for share price to adjusted 1 2Q'2016 book value per share (ex. AOCI); and

- 0.26x to 0.31x for share price to present value of estimated 2017 book value per share (ex. AOCI);

Lazard applied (i) each such range of P/E multiples to the estimated 2017 and 2018 earnings per share of Genworth (based on the Base Forecast) and (ii) each such range of P/BV multiples to reported adjusted 2Q'2016 book value per share (ex. AOCI) and estimated 2017 book value per share (ex. AOCI) of Genworth (based on the Base Forecast), which in the case of estimated 2017 book value per share (ex. AOCI), Lazard then discounted back to present value using a discount rate of 19.7%.

From this analysis, Lazard estimated an implied price per share reference range for shares of Genworth common stock as follows:

| | Implied Equity Valuation Range Low | Implied Equity Valuation Range High |
|---|---|---|
| P/E 2017E | $ 3.71 | $ 5.85 |
| P/E 2018E | $ 3.58 | $ 5.12 |
| Adjusted 2 2Q' 2016 P/BV (ex. AOCI) | $ 4.77 | $ 5.95 |
| Present Value of 2017E P/BV (ex. AOCI) | $ 3.87 | $ 4.67 |

Based on the foregoing results and Lazard's professional judgment, Lazard derived an implied price per share reference range for the Genworth common stock of $3.80 to $5.35.

*Sum-of-the-Parts Analysis.* Lazard performed a sum-of-the-parts analysis of Genworth to derive implied values for each of the following segments of Genworth:

- U.S. Life

- US MI

- Genworth Australia

- Corporate and Other (as further described below)

Lazard performed dividend discount analyses for U.S. Life, US MI and Genworth Australia to derive a range of implied values for each such segment.

In performing its dividend discount analysis with respect to U.S. Life, Lazard calculated a range of implied terminal values for U.S. Life in 2020 by applying (i) P/BV (ex. AOCI) multiples ranging from 0.20x to 0.30x to the projected book value (ex. AOCI) of U.S. Life in 2020 as set forth in the Base Forecast and (ii) a range of terminal value multiples of 5.6x to 8.4x to an estimate of fiscal year 2021 operating income as set forth in the Base Forecast. Lazard then discounted the estimated dividend streams from U.S. Life for the period 2017 through 2020 as set forth in the Base Forecast (which were $0 for such period) and the range of implied terminal values to derive implied present values, as of January 1, 2017, of U.S. Life, which ranged from $921 million to $1.484 billion. Lazard used a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital.

In performing its dividend discount analysis with respect to US MI, Lazard calculated implied terminal values for Genworth's assumed 80.1% ownership stake in US MI (pro forma for the assumed sale by Genworth of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017 as reflected in the Base Forecast) in 2020 by applying one-year forward P/E multiples ranging from 8.0x to 10.0x to estimated fiscal year 2021 operating earnings for US MI as set forth in the Base Forecast. Lazard then discounted the estimated dividend streams from Genworth's assumed 80.1% ownership in US MI for the period 2017 through 2020 as set forth in the Base Forecast and implied terminal values to derive implied present values as of January 1, 2017 of Genworth's assumed 80.1% ownership stake in US MI. Lazard used a range of discount rates from 8.5% to 10.0%, representing estimates of US MI's cost of equity, which resulted in implied present values of Genworth's assumed 80.1% ownership stake in US MI ranging from $1.419 billion to $1.808 billion, and a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital, which resulted in implied present values of Genworth's assumed 80.1% ownership stake in US MI ranging from $1.328 billion to $1.717 billion.

In performing its dividend discount analysis of Genworth Australia, Lazard calculated implied terminal values for Genworth's 52% ownership stake in Genworth Australia in 2020 by applying one-year forward P/E multiples ranging from 7.0x to 9.0x to estimated fiscal year 2021 operating earnings for Genworth Australia as set forth in the Base Forecast. Lazard then discounted the estimated dividend streams from Genworth's 52% ownership in Genworth Australia for the period 2017 through 2020 as set forth in the Base Forecast and implied terminal values to derive implied present values as of January 1, 2017 of Genworth's 52% ownership stake in Genworth Australia. Lazard used a range of discount rates from 9.0% to 10.5%, representing estimates of Genworth Australia's cost of equity, which resulted in implied present values of Genworth's 52% ownership stake in Genworth Australia ranging from $506 million to $576 million, and a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital, which resulted in implied present

values of Genworth's 52% ownership stake in Genworth Australia ranging from $488 million to $561 million.

Lazard also derived an implied value for Corporate and Other, which resulted in an implied valuation of $(1.160 billion), using the following data provided by management of Genworth: (i) pro forma estimates of Genworth's cash (excluding restricted cash) and debt valued at book value as provided by Genworth's management (including estimated cash proceeds to Genworth from the assumed sale of its 57.3% stake in Genworth Canada, a one-time dividend paid by US MI to Genworth from the proceeds of an assumed debt issuance by US MI and cash proceeds to Genworth from its assumed sale of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017 as reflected in the Base Forecast), (ii) the net present value of certain net deferred tax assets as of December 31, 2016 (valued using a discount rate of 8.0%, using the estimated utilization of such tax assets reflected in the Base Forecast) and (iii) the net present value of certain net accrued Genworth liabilities (valued using a discount rate of 8.0%, using the estimated net payment of such liabilities reflected in the Base Forecast).

Lazard added together the ranges of implied values it derived using the foregoing analysis to derive a range of implied equity values for Genworth, divided the result by the number of Genworth fully diluted shares outstanding provided by Genworth management and then discounted the implied values per share of Genworth common stock from January 1, 2017 to September 30, 2016 using a discount rate of 19.7% to derive a range of implied present values per share of Genworth common stock of $2.98 to $5.11.

Lazard also performed a sensitivity to its sum-of-the-parts analysis to analyze the impact of the sensitivities on the implied present values per share of Genworth common stock. Lazard calculated the sensitivity to its sum-of-the-parts analysis using the methodologies and discount rates described above, except that with the consent of the Board, and, based on the assessments of management regarding the uncertainty and risks associated with Genworth's LTC insurance business within Genworth's U.S. Life segment, Lazard assumed, for purposes of its analysis, that (i) morbidity claims costs for Genworth's LTC insurance business would be 4% higher over the forecast period than reflected in the Base Forecast and (ii) the LTC rate increases approved by the applicable regulators over the forecast period would be 10% less than the rate increases assumed in Genworth's multi-year rate action plan reflected in the Base Forecast. Lazard's consideration of the impact of the sensitivities in performing its dividend discount analysis with respect to U.S. Life resulted in implied present values for U.S. Life ranging from $0 to $1.484 billion (i.e., the sensitivities did not change the upper end of the range implied by using the Base Forecast). The sensitivity to the sum-of-the-parts analysis performed by Lazard implied a range of present values of Genworth common stock of $1.24 to $5.11.

79.     Without such undisclosed information, Genworth stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman Sachs and Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman Sachs' and Lazard's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

***Material Omissions Concerning the Flawed Sale Process***

80.     The Proxy also fails to disclose or misstates material information relating to the sale process leading up to the Proposed Transaction, including:

(a)     the indicative ratings developed by the S&P's Ratings Evaluation Service under two financial scenarios in connection with a merger of Genworth and China Oceanwide;

(b)     which directors comprised the STC, the Board's basis for appointing another director as an alternate member of the STC at the May 11-12, 2016 Board meeting and the identity of the alternate member;

(c)     whether, Genworth has entered into confidentiality agreements with potential transaction counterparties (other than China Oceanwide), that contain standstill provisions and, if so, the details of any standstill provisions including whether they contain don't-ask-don't-waive standstill provisions that are precluding these parties from making a post-closing topping bid for the Company; and

(d)     the reasons, if any, Company D did not submit any further inquiries or indications of interest to Genworth.

81.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)    From page 56 of the Proxy:

On that same date, Genworth provided projections to S&P's Ratings Evaluation Service for its use in developing indicative ratings under two financial scenarios. On September 28, 2016, at the request of China Oceanwide, Genworth provided updated projections, including updated financial scenarios, to representatives of S&P's Ratings Evaluation Service. The first scenario used a pro forma projection which was substantially similar to the September projections and, in addition, assumed a $525 million China Oceanwide capital contribution to facilitate the unstacking and a $600 million China Oceanwide capital contribution to retire Genworth's debt due in 2018 but did not include any purchase accounting adjustments related to the China Oceanwide transaction or any improvement in interest rates. The second scenario used the same projections as under the first scenario projections but included an additional $600 million China Oceanwide capital contribution to retire a portion of additional debt due in 2020 and 2021 for a total debt reduction of $1.2 billion.

(b)    From page 40 of the Proxy:

During the period from January 4, 2016 to June 21, 2016, Genworth and Company A remained engaged in negotiations regarding the proposed L&A Plus LTC Separation Transaction. Throughout this time, Company A and Genworth proposed many different iterations of the L&A Plus LTC Separation Transaction and the material terms of that transaction. During this time, the Board and, after it was established in March 2016, the Strategic Transactions Committee, comprised of independent directors (which we refer to as the " *STC* ") (the formation of which is described below), was kept apprised of material developments with respect to the discussions and negotiations relating to the L&A Plus LTC Separation Transaction. On several occasions, the Non-Executive Chairman of the Board, James S. Riepe, participated directly in discussions with representatives of Company A regarding the material terms of the proposed L&A Plus LTC Separation Transaction. Board or STC meetings at which the L&A Plus LTC Separation Transaction and the ongoing discussions with Company A were discussed among the directors and with management and the financial and legal advisors of Genworth and the Board or the STC, as applicable, were held 12 times between January 26, 2016 and June 6, 2016.

(c)    From pages 47-48 of the Proxy:

At this same meeting, the Board unanimously approved the formation of the STC comprised solely of independent directors. The purpose of the STC was to evaluate the strategic direction of Genworth, including potential strategic

transactions involving Genworth, and to report and make recommendations to the full Board with respect to any such strategic transaction.

* * *

At the May 11-12, 2016 meeting, the Board appointed another independent director as an alternate member of the STC.

(d)     From page 47 of the Proxy:

*Termination of discussions with Company D*

On March 29, 2016, representatives of Company D met with representatives of Genworth to discuss matters relating to Company D's due diligence investigation of Genworth. After this meeting, Genworth did not receive any proposals, indications of interest or material inquiries from Company D.

82.     Defendants' failure to provide Genworth stockholders with the foregoing material information renders the statements in the Proxy false and/or materially misleading and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

83.     Plaintiff repeats all previous allegations as if set forth in full.

84.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

85.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

86.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  The Proxy misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

87.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

88.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

89.    Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

90.    Plaintiff repeats all previous allegations as if set forth in full.

91.    The Individual Defendants acted as controlling persons of Genworth within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Genworth and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

92.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

93.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

94.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

95.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

96.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Genworth stockholders;

C.     Directing defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

39

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

O'KELLY & ERNST, LLC

Dated: January 25, 2017

By:   */s/ Ryan M. Ernst*

Ryan M. Ernst (#4788)
Daniel P. Murray (#5785)
901 N. Market Street, Suite 1000
Wilmington, DE 19801
(302) 778-4000
rernst@oelegal.com
dmurray@oelegal.com

*Attorneys for Plaintiff*

OF COUNSEL:

WEISSLAW LLP
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, NY 10036
(212) 682-3025